# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FREEMAN UNITED COAL MINING CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **INTERNATIONAL UNION, UNITED MINE** | ) | |
| **WORKERS OF AMERICA; REGION 3,** | ) | |
| **UNITED MINE WORKERS OF AMERICA;** | ) | |
| **DISTRICT 12, UNITED MINE WORKERS** | ) | |
| **OF AMERICA; LOCAL UNION 1969,** | ) | |
| **UNITED MINE WORKERS OF AMERICA** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Freeman United Coal Mining Company ("Freeman") files this Complaint against International Union, United Mine Workers of America; Region 3, United Mine Workers of America;  District 12, United Mine Workers of America; and Local Union 1969, United Mine Workers of America ("the Union").

## NATURE OF ACTION

1.   This case involves a challenge to a labor arbitration award which patently ignores the agreement between the parties.  The labor arbitration award was issued on August 3, 2005 by Arbitrator John J. D'Eletto.  Arbitrator D'Eletto's decision and award exceeds the scope of the dispute submitted for arbitration, exceeds the arbitrator's authority under the parties' agreement, bypasses the plain language of the parties' contract, and fashions remedies for disputes not before him and procedures which are contrary to the parties' agreement.  Arbitrator D'Eletto effectively re-wrote the parties' contract based upon his own sense of industrial justice.

2.   Pursuant to Article XXIX of the Freeman United Coal Mining Company and United Mine Workers of America Bituminous Coal Wage Agreement of 2003 (referred to as the "2003 BCWA"), the New Employee Memorandum of Understanding (referred to as the "2003 MOU") and the 2003 BCWA constitute the Collective Bargaining Agreement between the parties.  Also included as part and parcel of the Collective Bargaining Agreement are the parties' seven Letters of Understanding executed contemporaneously with the Collective Bargaining Agreement.  As part of the Collective Bargaining Agreement, the 2003 MOU provides management with the right to pay lower wages, avoid the job bidding procedures, enforce a stringent absenteeism program, and apply many other terms and conditions of employment for the performance of jobs at its operations by "New Hires."  These management rights supersede the rights of employees under the 2003 BCWA.  In accordance with its rights, management assigned repairman trainee jobs to "New Hires."  The arbitration decision and award in this case vacated management's rights and the 2003 MOU; and required the posting of repairman-trainee jobs at all of Freeman's operations.  As a result, the award must be vacated.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction pursuant to 29 U.S.C. §185 because this action involves the alleged breach of a contract between an employer and a labor organization representing employees in an industry affecting interstate commerce.  The Court also has jurisdiction pursuant to 28 U.S.C. §1331 as it arises under the Labor Management Relations Act, 29 U.S.C. §141 *et seq.*

4.   Freeman is a corporation organized and existing under the laws of Delaware. Freeman is engaged in the underground mining of bituminous coal at two mines in

Illinois.  The mines are known as the Crown II mine located near Virden, Illinois and the Crown III mine, located near Farmersville, Illinois.

5.   Defendant International Union, United Mine Workers of America is an unincorporated association and labor organization, as defined in the Labor Management Relations Act, defendant International Union conducts business in this District and represents members, including employees of plaintiff, in this District.

6.   Defendant Region 3, United Mine Workers of America is an unincorporated association and labor organization, as defined in the Labor Management Relations Act, defendant Region 3 conducts business in this District and represents members, including employees of plaintiff, in this District.

7.   Defendant District 12, United Mine Workers of America is an unincorporated association and labor organization, as defined in the Labor Management Relations Act, defendant District 12 conducts business in this District and represents members, including employees of plaintiff, in this District.

8.   Defendant Local Union 1969, United Mine Workers of America is an unincorporated association and labor organization, as defined in the Labor Management Relations Act, defendant Local Union 1969 conducts business in this District and represents members, including employees of plaintiff, in this District.

9.   Venue is proper in this District pursuant to 29 U.S.C. §185 and 28 U.S.C. § 1391 because the defendants conduct business in the Central District, are subject to jurisdiction in this District and a substantial part of the events giving rise to this claim occurred in this District.

## FACTS GIVING RISE TO THE CONTROVERSY

**Background**

10. Freeman and the Union entered into a Collective Bargaining Agreement, effective January 16, 2003, governing certain mines, including the Crown II and Crown III mines. The Collective Bargaining Agreement is set forth in two documents, the 2003 BCWA and the 2003 MOU. A copy of the 2003 MOU is attached as Exhibit A, a copy of the 2003 BCWA is attached as Exhibit B and copies of the seven Letters of Understanding are attached as Exhibit C. The 2003 MOU provides in its initial paragraph that "in the event of a conflict between the terms and the conditions of the 2003 [BCWA] or any terms and conditions of employment, and this MOU, this MOU shall prevail."

11. The parties' agreement establishes, among other terms and conditions, classifications for the employees working at a mine and procedures whereby certain employees may be assigned to job vacancies and other employees may bid on job vacancies.

12. The 2003 MOU establishes broad rights of management in the application of terms and conditions of employment for employees hired after January 16, 2003. All such employees are deemed "New Hires" under the 2003 MOU.

13. Under the 2003 MOU, new employees progress through three classifications: "probationary trainee", "new hire", and "apprentice." Each New Hire initially is classified as a probationary trainee for the first 90 days of his active work, and is then classified as a new hire for the next nine calendar months in which the employee is actively working. The 2003 MOU provides that "each new hire may be assigned to perform the work of any classification on any shift." *2003 MOU p. 7*. The new hire is

then classified as an apprentice and remains in the apprentice classification for an additional twelve months of active work performance. The 2003 MOU provides that "each apprentice may be assigned to perform the work of any classification on any shift." *2003 MOU p. 7.*

14. After completing 24 months of service, each New Hire under the 2003 MOU is assigned to a permanent classification from which he may only bid to another job vacancy. The requirement to assign a New Hire to a permanent job upon completion of 24 months of service is provided for by a January 7, 2003 Letter of Understanding which the parties agreed formed part and parcel of the 2003 BCWA.

15. As of November 2004, there were three vacant Repairman positions at Freeman's Crown II mine. No qualified employees bid on the vacant positions and the positions remained unfilled.

16. In accordance with the provisions of the 2003 MOU, Freeman assigned "New Hires" (as defined in the 2003 MOU) to perform the work of the vacant Repairman positions at the Crown II mine.

**The Grievance and Arbitration Award**

17. On or about November 22, 2004, Kenneth Violet, a Freeman employee, filed a grievance contending that "Grievant believes Company has not posted Repair trainee Bid. Instead Company has put someone as a 'Repair Helper' which is not a classification. This is a supposedly a temporary job title."

18. The agreement provides for Freeman and the Union to attempt to resolve disputes; if no resolution is reached, the specific dispute is submitted to arbitration.

19. The Union had previously filed a grievance challenging Freeman's right at the

Crown III mine to assign New Hires to fill vacant Repairman Jobs after the position had

been bid and not filled.  That grievance was pursued to arbitration where it was denied by

the arbitrator.  On May 10, 2005, Arbitrator Frank A. Keenan ruled that the 2003 MOU

authorized Freeman to assign the Repairman Jobs to New Hires as Repairman-Trainees

and rejected the Union's contention that the vacant positions must be filled through the

training provisions set forth in the 2003 BCWA.  A copy of that opinion is attached as

Exhibit D.

20. Freeman and the Union were unable to resolve the grievance at the Crown II

mine.  The matter was then assigned for arbitration before Arbitrator D'Eletto.

21. The parties' agreement provides for binding arbitration and provides that a

hearing will be held and that hearing "shall be closed upon the completion of testimony."

*2003 BCWA p. 115.*  The agreement expressly provides that an arbitrator's decision "shall

govern only the dispute before him."  *Id.*

22. An arbitration hearing was held on June 15, 2005.  However, the arbitrator did

not close the record at the end of the hearing as required under the terms of the parties'

arbitration agreement.

23. On or about August 3, 2005, Arbitrator D'Eletto issued a decision and award

sustaining the grievance.  The award was styled:  *In the Matter of Arbitration Between*

*International Union United Mine Workers of America District 12 and Freeman United*

*Coal Mining Company Crown II Mine*.  A copy of the award is attached as Exhibit E.

24. In deciding to sustain the grievance, arbitrator D'Eletto, among other things,

(a) ruled that his decision would apply to all Freeman operations and not merely to the

dispute before him; (b) ruled that his decision would establish a procedure that would

govern Freeman's management with respect to all prospective vacant Repairman

positions at Freeman's various operations; (c) rewrote the parties' Collective Bargaining Agreement by opining that the 2003 MOU was merely a "secondary" document to the 2003 BCWA; (d) ignored the terms of the 2003 MOU and ruled that Freeman could only assign New Hires to assist Repairmen; (e) voided all seven (7) of the Letters of Understanding agreed to by the parties as part and parcel of the 2003 BCWA; (f) ordered Freeman to anticipate future needs for repairman trainees or repairman apprentices and post those positions to be bid by non-New Hire employees; and (g) established a procedure for filling job assignments expressly contrary to the parties' agreement.

## CLAIM FOR RELIEF

25. Paragraphs 1 through 24 are repeated and realleged as if fully set forth herein.

26. This decision nullifies the parties' bargained-for ability to place New Hires in appropriate positions based on Freeman's immediate needs.  This decision also vacates all seven (7) Letters of Understanding which are an integral part of the Collective Bargaining Agreement.  This action will create significant confusion and turmoil in the continued implementation of the parties' Collective Bargaining Agreement at all Freeman operations.  The economic effect of the decision is that the cost of Freeman's operations will rise.  The arbitrator's personally substituted method for filling job assignments creates inefficiencies and obstacles to profitable operations in the difficult market for Illinois basin coal.  This decision will add needless time and expense because the majority of Freeman's employees would take a substantial pay cut if they became a repairman-trainee or apprentice.

27. Accordingly, Arbitrator D'Eletto's decision and award must be vacated because it exceeds the scope of the dispute submitted for arbitration, exceeds the

arbitrator's authority under the parties' agreement, ignores the parties' contract, fashions

remedies for disputes not before the arbitrator and procedures which are contrary to the

parties' agreement, and constitutes a re-writing of the parties' contract based upon the

arbitrator's own sense of industrial justice.

## **RELIEF REQUESTED**

WHEREFORE Freeman prays for judgment against the Union as follows:

a.      The Court enter an order vacating the August 3, 2005 arbitration award of

Arbitrator D'Eletto;

b.      For such other and further relief as this Court may deem just and proper.

LIVINGSTONE, MUELLER, O'BRIEN
& DAVLIN, PC


/s   Martin J. Haxel
Martin Haxel Bar Bar Number: 6182016
Attorney for Plaintiff
Livingstone, Mueller, O'Brien & Davlin, P.C.
620 East Edwards Street
Springfield, IL 62705
Telephone: (217) 525-1070
Fax: (217) 525-1080
E- mail: mjh@livingstonelaw.com

*Counsel for Plaintiffs*




VENABLE LLP


Michael W. Robinson, Lead Counsel
David S. Smith
Jan W. Sturner
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182
(703) 760-1600
(703) 821-8949 (facsimile)

*Of Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing COMPLAINT was sent via regular United States mail, postage prepaid this 18th day of August, 2005 to the following parties:

International Union, United Mine Workers of America
8315 Lee Highway
Fairfax, VA 22031

Region 3, United Mine Workers of America
1530 N. Main St.
Benton, IL 62812

District 12, United Mine Workers of America
1530 N. Main St.
Benton, IL 62812

Local Union 1969, United Mine Workers of America
P.O. Box 672
Taylorville, IL 62568


<u>/s    Martin J. Haxel  </u>
Martin J. Haxel